# In the United States Court of Federal Claims

No. 12-889L and No. 13-404L (Consolidated)

(Filed: December 22, 2015)

| | |
|---|---|
| CLAUDE SEARS, et al.,  ) | Rails-to-trails takings case; class action; |
|  ) | withdrawal from incomplete settlement |
|  ) | agreement; absence of mutual agreement; |
| Plaintiffs,  ) | division of a class into subclasses; RCFC |
|  ) | 23(c)(5) |
| v.  ) | |
|  ) | |
| UNITED STATES,  ) | |
|  ) | |
| Defendant.  ) | |
|  ) | |

Thomas S. Stewart, Stewart Wald & McCully LLC, Kansas City, Missouri, for plaintiffs. With him on the briefs were Elizabeth G. McCulley and Steven M. Wald, Stewart Wald & McCully LLC, Kansas City, Missouri, and St. Louis, Missouri.

Gregory D. Page, Trial Attorney, Natural Resources Section, Environment & Natural Resources Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs was John C. Cruden, Assistant Attorney General, Environment & Natural Resources Division, United States Department of Justice, Washington, D.C.

**OPINION AND ORDER**

LETTOW, Judge,

Before the court in this rails-to-trails takings case is plaintiffs' notice of partial withdrawal from a nascent, incomplete settlement and motion to create subclasses. The court certified a class in July 2013 totaling 170 landowners in Marshall and Hardin Counties, Iowa whose land was part of the railroad line formerly operated by Iowa River Railroad, Inc.[1] After discovery and trial preparatory proceedings, the court scheduled a trial to occur at Eldora, Iowa and Washington, D.C. in August 2015. Shortly before trial was to begin, the parties represented to the court that they had resolved nearly all of the relevant issues of disputed fact in this case and were endeavoring to complete a settlement agreement. As a result, the court cancelled the scheduled trial proceedings. Settlement then reportedly was reached on all issues except an interest component. Class counsel now represents that the owners of 21 parcels of the 269 parcels at issue in this case wish to withdraw from the incomplete settlement and proceed to a trial on the merits. To that end, plaintiffs have moved under Rule 23(c)(5) of the Rules of the United States Court of Federal Claims ("RCFC") to create two subclasses, a subclass consisting of the owners of the 21 parcels who wish to proceed to trial, which parcels are agricultural lands

---

[1]The total number of landowners includes those in both of the consolidated cases.

bisected at an acute angle by the ex-railroad right-of-way (the proposed "angularly-bisected agricultural-property subclass"), and a subclass of the owners of the remaining 248 parcels. Plaintiffs have also asked the court to set a trial date for the angularly-bisected agricultural-property subclass.  The government opposes the creation of subclasses on the grounds that the court should not allow the owners of 21 parcels to withdraw from what it characterizes as a "proposed settlement agreement," and that doing so will create a conflict of interest between the class counsel in representing the two proposed subclasses.  The court has determined that plaintiffs' motion to create subclasses should be granted, that no conflict of interest arises, and that a trial should be scheduled for the angularly-bisected agricultural-property subclass.

**BACKGROUND**

The land at issue was previously held as a right-of-way for railroad purposes by Iowa River Railroad, "extending from milepost 243.35 near Marshalltown, Iowa, to milepost 209, outside Steamboat Rock, Iowa, a total distance of 34.35 miles, in Marshall and Hardin Counties, Iowa."  Second Am. Compl. ¶ 4, ECF No. 33.  The Iowa National Heritage Foundation filed a Trail Use Request with the federal government's Surface Transportation Board ("Board") on May 17, 2012.  Second Am. Compl. ¶ 177.  The Board issued a Notice of Interim Trail Use or Abandonment ("NITU") on August 2, 2012, allowing the general public to use the right-of-way as a trail.  Second Am. Compl. ¶ 176; *see also* National Trails System Act Amendments of 1983, Pub. L. No. 98-11, § 208, 97 Stat. 42, 28 (codified at 16 U.S.C. § 1247(d)); 49 C.F.R. § 1152.29.  As of October 2014, when plaintiffs' filed their second amended complaint, the Iowa River Railroad was negotiating a Trail Use Agreement to transfer the right-of-way to the Iowa Natural Heritage Foundation as the trail operator.  Second Am. Compl. ¶ 177.

Plaintiffs contend that under Iowa law, the right-of-way was abandoned when the Iowa River Railroad "ceased operation of a railroad . . . and took steps demonstrating abandonment." Second Am. Compl. ¶ 180.  At that point, in plaintiffs' view, they "regained the right to use and possess their property free of any easement."  Second Am. Compl. ¶ 180.  Therefore, plaintiffs claim that by issuing the NITU to convert the right-of-way to a public trail, the government has taken their property interests without compensation in contravention of the Fifth Amendment.  Compl. ¶¶ 178-79.

The court certified a class in this case on July 10, 2013, consisting of "[a]ll persons who . . . own an interest in lands constituting part of the railroad line that was formerly operated by the [Iowa River Railroad] in Marshall and Hardin Counties, Iowa."  Class Certification Order at 1, ECF No. 14.  In June 2014, after the plaintiffs developed their Claims Book and the government responded, the court adopted a schedule for pre-trial proceedings and trial.  Scheduling Order (June 20, 2014), ECF No. 32; *see also* Pls.' Request for a Status Conference and Mot. for a Trial Setting Pursuant to Rule 40, at 1, ECF No. 22.  The case proceeded through fact discovery, and at a status conference in January 2015, the parties represented to the court that they had resolved all liability issues such that the trial scheduled for August 2015 would, at most, be a valuation trial.  Hr'g Tr. 3:21-4:12, 4:15-19 (Jan. 28, 2015).  At a subsequent status conference in June 2015, the parties informed the court that they had virtually resolved all remaining issues of disputed fact and were negotiating a settlement agreement.  Hr'g Tr. 4:1-6 (June 30, 2015) (noting that the parties initially had some difficulty resolving claims related to

"severed agricultural properties," but that the owners of such parcels were now willing to settle). Consequently, the court rescinded the pre-trial and trial schedule in this case. Order of June 30, 2015, ECF No. 42.

On August 31, 2015, the parties filed a joint status report indicating they had "confirmed the . . . settlement values for the 269 parcels for which plaintiffs would receive compensation," and "agreed to a proposed settlement of . . . accrued prejudgment interest . . . for a projected prejudgment interest period between August 3, 2012 and February 3, 2016," leaving open interest after February 3, 2016, and that they were working to resolve "the issue of attorneys' fees and costs." Joint Status Report at 1-2, ECF No. 43.[2] At a status conference on October 21, 2015, the parties informed the court that they were unable to reach agreement on the "only remaining issue" in the case: the rate of interest to which plaintiffs might be entitled beyond February 3, 2016. Hr'g Tr. 4:7-12 (Oct. 21, 2015). After considering three alternatives presented by the parties to address the last issue, the court agreed to resolve that matter consequent to briefing by the parties regarding the continued interest rate. Scheduling Order (Oct. 21, 2015), ECF No. 47.

Approximately three weeks later, class counsel notified the court that landowners who collectively own 21 of the 269 parcels at issue in this case were withdrawing from the settlement negotiations. Pls.' Notice of Partial Withdrawal from Settlement, Mot. to Create Subclasses, Mot. to Vacate Current Briefing Schedule, and Mot. for Trial Setting ("Pls.' Mot.") at 2, ECF No. 50. The 21 parcels are agricultural properties that are angularly bifurcated by the former rail line. Pls.' Mot. at 3; *see also* Hr'g Tr. 4: 8-11, 6:4-13 (Dec. 8, 2015) (confirming that the 21 parcels were the "severed agricultural properties" mentioned during the June 2015 status conference that had been more difficult to resolve during the settlement negotiations). Class counsel moved under RCFC 23(c)(5) to form two subclasses, one which would proceed with the nearly-complete settlement, supplemented by the court's decision on continued interest, and the other which would proceed to trial. Pls.' Mot. at 2-5.[3] The government opposes the withdrawal of some class plaintiffs from settlement negotiations and the formation of two subclasses, invoking two chief grounds: (1) that RCFC 23(a)(4) and 23(e) "require class counsel to work with federal counsel to finalize the proposed settlement because a supermajority of the class . . . supports it," and (2) that creating subclasses would create "potential conflicts of interest" between the class counsel and one or both of the subclasses. Def.'s Opp'n to Class Counsel's Mot. to Create Subclasses and Vacate this Court's Scheduling Order ("Def.'s Opp'n") at 6-11,

---

[2]The parties reached an agreement on attorneys' fees and costs on September 22, 2015. Status Conference Tr. 5:16-19 (Oct. 21, 2015).

[3]Class counsel also moved to vacate the briefing schedule previously set by this court to address the issue of prejudgment interest beyond February 3, 2016. Pls.' Mot. at 4. During a hearing on December 8, 2015, class counsel advised the court that he was withdrawing the motion to vacate. Hr'g Tr. 11:21 to 12:1 (Dec. 8, 2015). The court then granted an extension of time for the parties to brief their dispute over the continuing-interest issue. Order of Dec. 8, 2015, ECF No. 55. Briefing and disposition of the remaining continued-interest issue accordingly will take place as previously contemplated.

ECF No. 51. The court held a hearing on plaintiffs' motions on December 8, 2015, and they are now ready for disposition.

## ANALYSIS

### A. *Withdrawal from Settlement Negotiations*

As a threshold matter, the government challenges plaintiffs' notice of withdrawal from settlement, claiming that the owners of 21 parcels cannot withdraw at this stage of the settlement negotiations. Def.'s Opp'n at 6-9. This objection raises an issue of contract law. "A class-action settlement, like an agreement resolving any other legal claim, is essentially a private contract negotiated between the parties." 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.161[1] (3d ed. 2012); *see also Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989) ("An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law."). Under the principles of contract law, if, as here, there is not an express contract between the parties, there may nevertheless be an implied-in-fact contract "inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Baltimore & Ohio R.R. v. United States*, 261 U.S. 592, 597 (1923); *see also Frankel v. United States*, 118 Fed. Cl. 332, 335 (2014) (Allegra, J.). For example, in *S & T Mfg. Co. v. Hillsborough Cnty., Fla.*, 815 F.2d 676, 678 (Fed. Cir. 1987), the Federal Circuit affirmed a district court's finding that a settlement contract had been agreed when the parties met in a judge's chambers, revised previously proposed settlement terms, including attendant drawings, and the resulting complete agreement was transcribed for the record and the drawings were initialed by the parties and counsel. In a class action, once the parties have reached an agreement and have submitted a "proposed settlement" to the court, the settlement is not final until the court has approved the proposal. RCFC 23(e) ("The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."); *see also* James Wm. Moore, et al, *Moore's Federal Practice Manual for Complex Litigation* § 21.61 (4th ed. 2004) (explaining the judicial role in reviewing a class action settlement). Upon being presented with a proposed, agreed settlement, the court will hold a hearing to determine whether the proposal is "fair, reasonable, and adequate," at which time "[a]ny class member may object to the proposal." RCFC 23(e)(2), (5).

The government asserts that because class counsel previously "committed himself to [a] proposed settlement," RCFC 23(a)(4) and 23(e) require this court to force the owners of all 269 parcels to continue with the "proposed settlement" to a fairness hearing, at which time the owners would have an opportunity to object. Def.'s Opp'n at 6-8.[4] However, the government

---

[4]RCFC 23(a)(4) requires the representative parties in a class action to "fairly and adequately protect the interests of the class." The government asserts that the only way for class counsel to "fairly and adequately" represent the owners of all 269 parcels is for counsel to endeavor to complete a negotiated settlement and proceed to a fairness hearing under the provisions of RCFC 23(e)(2). Def.'s Opp'n at 8. The government does not explain how it reached this conclusion about class counsel's obligations, except to state that "[t]he proposed settlement contemplated all the properties at issue." *Id.* This statement poses the question whether the government will abandon settlement negotiations if the owners of 21 parcels

mischaracterizes the status of settlement negotiations in this case. A "proposed settlement" is one that has been agreed upon by all parties and submitted to the court for review. *See Manual for Complex Litigation* § 21.61; *Moore's Federal Practice* § 23.160; *see also, e.g.*, *Hunneshagen Family Trust of June 25, 1999 v. United States*, 121 Fed. Cl. 51, 54-55 (2015) (describing the process by which parties in a takings class action submit a proposed settlement agreement to the court for review). Here, the parties advised the court in June 2015 that they were pursuing settlement negotiations, but that claims involving certain parcels that were angularly bifurcated by the former rail line were more difficult to resolve. *See* Hr'g Tr. 4:1-6 (June 30, 2015). And, as of late October 2015, the parties had still not reached a settlement agreement because of the dispute over prejudgment interest beyond February 3, 2016. *See* Hr'g Tr. 4:7-12 (Oct. 21, 2015) (setting out government counsel's explanation why the parties were at "an impasse"). Therefore, at most, the parties had negotiated a tentative, partial settlement on all issues but the continuing interest.

After the court and the parties agreed to brief the continuing interest issue for the court's decision, class counsel notified the government and the court that the owners of 21 parcels no longer wished to settle their claims. Pls.'s Mot. at 2. The government may be disappointed by this turn of events, but without an agreement by the parties, there is no "proposed settlement" for the court to review under RCFC 23(e), notwithstanding the government's suggestion that such review is the proper way forward. Indeed, the government cannot establish that there now is mutual assent to a settlement agreement between the government and *any* members of the class because the continuing interest issue remains unresolved, even for those class members who still want to settle the property damages. *See* Hr'g Tr. 38:6-9 (Dec. 8, 2015) (class counsel acknowledging that briefing on the continuing interest issue is still necessary for the proposed "settlement class"). To be precise, the court cannot force the owners of 21 parcels to continue with settlement negotiations if they no longer wish to do so, nor can it enforce the provisions of a "proposed settlement agreement" that does not exist. The government's objections to withdrawal of some class members from settlement negotiations are unavailing.

B. *Requirements for Division of a Class into Subclasses*

Next, plaintiffs have moved to divide the existing class of landowners into two subclasses. Before addressing the government's objections, the court must first examine whether such a subdivision is appropriate under the rules of this court. RCFC 23(c)(5) ("When appropriate, a class may be divided into subclasses that are each treated as a class under this

---

withdraw, which in turn would cause a detriment to the owners of the remaining 248 parcels. *See also* Hr'g Tr. 20:3-6 (Dec. 8, 2015) (statement by government counsel that "if [the court] divide[s] the class now, [it] remove[s] one of the only two reasons why the United States agreed to propose settlement in the first place."). This may or may not be the case, but in any event, the pertinent decision is one for the government to make, not class counsel. The government has not established that forcing settlement negotiations on unwilling class members is even possible, let alone the only way for class counsel to "fairly and adequately" represent the class. Indeed, if certain class members no longer wish to settle on terms the parties have discussed, it is difficult to see how class counsel could "fairly and adequately" represent reluctant class members' views by continuing with settlement negotiations on their behalf.

5

rule.").[5]  This rule allows the court to "treat common things in common and to distinguish the distinguishable." *Jenkins v. United Gas Corp.*, 400 F.2d 28, 35 (5th Cir. 1968).  "Accordingly, subclasses may be certified to provide adequate representation to plaintiffs who have interests that are in some respects adverse to one another, *see Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999), or to distinguish groups of plaintiffs by injury sustained, *see, e.g.*, *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982), or . . . to isolate common issues of law or fact shared by distinct groups of plaintiffs, *see, e.g.*, *Pruitt v. Allied Chem. Corp.*, 85 F.R.D. 100, 111-12 (E.D. Va. 1980)."  *Haggart*, 104 Fed. Cl. at 488.  Each subclass must satisfy the requirements of RCFC 23(a) and (b), *viz.*, "(i) numerosity, (ii) commonality, (iii) typicality, (iv) adequacy, and (v) superiority."  *Id.* (citing *King v. United States*, 84 Fed. Cl. 120, 123 (2008); *Barnes v. United States*, 68 Fed. Cl. at 494); *see also Manual for Complex Litigation* § 21.23.

Here, subdivision of the class originally certified in July 2013 is appropriate based on a development in the case, namely the decision by the owners of 21 parcels to withdraw from settlement negotiations.  *See, e.g.*, *Haggart*, 104 Fed. Cl. at 487 (creating six subclasses due to distinguishing factors identified after certification of the original class).  The division of the original class into a acutely-bisected agricultural-property subclass and a settlement subclass will allow the court to "distinguish the distinguishable," thus promoting the purpose of RCFC 23(c)(5).  See *Jenkins*, 400 F.2d at 35.

With regard to the numerosity requirement of RCFC 23(a)(1), the proposed subclass of the owners of 21 parcels meets this requirement.  As this court noted in *Haggart*, where it certified classes of 18 and 25 members, "certification of classes of this listed size is by no means unprecedented."  *Haggart*, 104 Fed. Cl. at 489 (citing *Douglas R. Bigelow Trust v. United States*, 97 Fed. Cl. 674, 677 n.6 (2011) (stating that the numerosity requirement is a fact-specific determination and certifying a class of twenty-five members); *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56-57 (N.D. Ill. 1996) (eighteen members); *Manning v. Princeton Consumer Discount Co.*, 390 F. Supp. 320, 324 (E.D. Pa. 1975) (fifteen members), *aff'd*, 533 F.2d 102 (3d Cir. 1976); *Dale Elecs., Inc. v. R.C.L. Elecs., Inc.*, 53 F.R.D. 531, 534, 536 (D.N.H. 1971) (thirteen members)).[6]  In addition, treating these 21 parcels as one class promotes judicial economy

---

[5]RCFC 23(c)(5) is identical to Fed. R. Civ. P. 23(c)(5).  "In general, 'cases applying [Fed. R. Civ. P. 23] have been examined and followed in interpreting RCFC 23.'"  *Haggart v. United States*, 104 Fed. Cl. 484, 488 n.1 (2012) (quoting *Haggart v. United States*, 89 Fed. Cl. 523, 529 (2009) (in turn citing *Barnes v. United States*, 68 Fed. Cl. 492, 494 n.1 (2005))).  "The principal difference between Fed. R. Civ. P. 23 and RCFC 23 is that this court's rule provides only for opt-in classes and does not allow opt-out classes."  *Id.* (citing *Geneva Rock Prods., Inc. v. United States*, 100 Fed. Cl. 778, 785-86 (2011)).

[6]Here, the proposed litigation subclass consists of seven owners of 21 total parcels.  Pls.' Mot. at 2.  While a class of seven members is smaller than the classes in the cited cases, it is important to note that because this is a land takings case, each parcel represents a discrete claim against the government.  Therefore, the court will consider this factor in its fact-specific numerosity determination.  *Douglas R. Bigelow Trust*, 97 Fed. Cl. at 677.

because the alternative is multiple suits against the government. *See id.* (citing *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)).

With regard to the other four factors, the court previously certified the larger class in July 2013, based on a joint class certification stipulation by the parties. Class Certification Order at 1. In their stipulation, the parties agreed that "this action should be maintained as a class action under [RCFC 23]." Joint Class Certification Stipulation and Proposed Plan for Providing Notice to the Class at 1, ECF No. 13. The proposed subclasses do not change anything with regard to the commonality or typicality of the claims, the adequacy of representation for each subclass,[7] or the superiority of the proposed class action as compared to individual suits.

Accordingly, the proposed subclasses meet the requirements of RCFC 23(a), (b), and (c) for subdivision from the class originally certified by this court in July 2013.

### C. *Potential Conflict of Interest Between Class Counsel and Subclasses*

Notwithstanding this court's determination that the proposed subclasses meet the requirements of RCFC 23, the government contends that by establishing subclasses, the court will "create[] a potential conflict of interest" between class counsel and the subclass members. Def.'s Opp'n at 10. As evidence of this conflict, the government points to "class counsel's previous billing practice," which allocates attorney's fees and costs based upon recovery for the class's "common fund." *Id.* at 9. The government reasons that by going to trial with the proposed acutely-bisected agricultural-property subclass, class counsel will generate additional fees that will "disproportionately harm" the settlement subclass because these fees will be withdrawn from the same common fund as the angularly-bisected agricultural-property subclass. *Id.* at 10. The government also suggests that by scheduling a trial for the latter subclass, the court will delay the settlement subclass's receipt of "settlement monies," when class counsel previously represented that the settlement subclass was interested in payment as soon as possible. *Id.* at 9; *see also* Hr'g Tr. 21:11-18 (Dec. 8, 2015).

The government has not shown that the creation of subclasses will create a conflict of interest with class counsel in representing the two subclasses. Respecting class counsel's ability under RCFC 23(a)(4) to "fairly and adequately" represent both subclasses, there is no material divergence between the subclasses on issues of law and fact. The government has provided no evidence, other than assertions about class counsel's past billing practices, that the proposed settlement subclass will be financially disadvantaged by additional attorney's fees and costs incurred in representing the angularly-bisected agricultural-property subclass. Each subclass may bear their own fees commencing with the decision to create subclasses. And there is no basis to suppose that the attorneys' fees to be borne by the settlement subclass will be any greater (or lesser) with the creation of subclasses than they would be absent that step. If a common fund

---

[7]The government asserts that the class counsel cannot "adequately and fairly" represent the proposed subclasses because he previously committed to settlement negotiations, and because creating subclasses creates a potential conflict of interest. Def.'s Opp'n at 8-11. The court has separately addressed and rejected any assertion of conflict of interest. *See supra*, at 4 n.4., and *infra*.

is created, and attorneys' fees are awarded out of the fund, the basis for the fees to be payable out of the fund will have been established with legal retention agreements and joinder in the class prior to July 2013.  Additionally, because liability was addressed by the parties some time ago in connection with their consideration of the Claims Book and early discovery, any increase in fees attributable to a damages trial for the angularly-bisected agricultural-property subclass will ultimately be payable by the government under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654(c), if the subclass proves damages.  In short, the settlement subclass would have no additional exposure to attorneys' fees due to the establishment of subclasses.

Further, the government has not established that there will necessarily be a time delay in the settlement subclass receiving a judgment or payment.  The court can issue a judgment under RCFC 54(b) for the settlement subclass independent of a judgment for the other subclass.  *See* RCFC 54(b) ("When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."); *see also, e.g.*, *Moore v. United States*, 54 Fed. Cl. 747, 755 (2002) (ordering the parties to indicate their preference as to whether a judgment under RCFC 54(b) should be entered for certain plaintiffs in a takings class action where liability and valuation had been determined for those plaintiffs but not others).  Some delay for the settlement subclass will occur even with that procedural route.  Time will be required to complete the judgment for the proposed settlement subclass because the court must still resolve the continuing interest issue currently being briefed by the parties, and then the court must issue notice to the subclass of a completed proposed settlement, receive responses to the notice, and conduct a fairness hearing under RCFC 23(e)(2).  Consequently, a judgment for the settlement subclass will not necessarily be issued much, if any, earlier than a judgment for the subclass that proceeds to trial.

In short, the government's objections to creating subclasses based upon conflict-of-interest grounds are rejected.

## CERTIFICATION

RCFC 23(c)(1)(B) states that a certification order must "define the class and the class claims, issues, or defenses, and must appoint class counsel under RCFC 23(g)."  The court certifies two subclasses according to the specifications set out below.  The court divides the overarching class into the following two subclasses:

> *Subclass One:* Owners of 21 parcels, each comprising an angularly-bisected agricultural property, who wish to proceed to trial to resolve their claims against the government.[8]

---

[8]The class members in this grouping are Jay Neil & Denzil J. Gould (parcel nos. 77.A, 77.B), Deane Adams (parcel no. 85), John E. & June A. Bradley (parcel nos. 87.A, 87.B), Norval K. & Esther M. Mosher (parcel Nos. 89.A, 89.B, 89.C), Charles S. Heene (parcel nos. 91.A, 91.B, 91.C, 91.D), Howard T. & Nancy C. Hill (parcel nos. 100.A, 100.B, 100.C, 100.D), and Richard K. Richards Estate c/o Vicki Richards (parcel nos. 120.A, 120.B, 120.C. 120.D, 120.E).  *See* Pls.' Mot. at 2.

*Subclass Two:* Owners of the remaining 248 parcels who wish to settle their claims against the government.

The primary issue for the overall class, whether the "August 3, 2012 [NITU] issued by the Surface Transportation Board . . . took [plaintiffs'] property rights to possession, control and enjoyment of this rail line or a segment thereof," Class Certification Order at 1, continues to apply to each subclass. The court also approves Thomas S. Stewart of the law firm Stewart Wald & McCully LLC as the attorney of record for both subclasses.

The court will separately issue a scheduling order for the pre-trial and trial proceedings for the angularly-bisected agricultural-property subclass.

## CONCLUSION

For the reasons stated, plaintiffs' motion to establish subclasses is GRANTED. Plaintiffs' motion for a trial setting for the angularly-bisected agricultural-property subclass is also GRANTED.

The parties shall continue to follow the scheduling order issued on December 8, 2015 with regard to briefing the issue of continued interest beyond February 3, 2016 for the court's decision applicable to the settlement subclass. Once this issue is resolved, and once the parties have submitted a proposed settlement agreement for the settlement subclass, the court will review the agreement and consider issuing a notice of settlement to the subclass preparatory to receiving comments from the subclass and holding a fairness hearing under RCFC 23(e)(2).

The court will separately issue a scheduling order for the pre-trial and trial proceedings for the angularly-birsected agricultural-property subclass.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge