# In the United States Court of Federal Claims

Nos. 12-889L; 13-404L; 16-1233L (Consolidated)

(Filed: May 8, 2018)

| | |
|---|---|
| ************************************<br>**CLAUDE SEARS, et al.,**<br>**Plaintiffs,**<br>**v.**<br>**UNITED STATES,**<br>**Defendant.**<br>************************************ | Rails-to-trails takings case; class action; settlement; fairness hearing; RCFC 23(e) |

Thomas S. Stewart, Stewart, Wald & McCulley, L.L.C., Kansas City, Missouri, for plaintiffs. With him on the briefs were Elizabeth McCulley and Steven M. Wald, Stewart, Wald & McCulley, L.L.C., St. Louis, Missouri and Kansas City, Missouri, and J. Robert Sears, Baker Sterchi Cowden & Rice, L.L.C., St. Louis Missouri.

David L. Negri, Trial Attorney, Natural Resources Section, Environment and Natural Resources Division, United States Department of Justice, Boise, Idaho, for defendant. With him on the briefs was Jeffrey H. Wood, Acting Assistant Attorney General, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

Pending before the court in this rails-to-trails class action is the parties' Joint Compromise Settlement Agreement which has been the subject of notice to class members and a fairness hearing regarding the terms of the settlement. This agreement represents the resolution of claims by 158 members of a settlement subclass that the federal government, acting under the National Trails System Act Amendments of 1983, Pub. L. No. 98-11, § 208, 97 Stat. 42, 48 (codified at 16 U.S.C. § 1247(d)), took their property without just compensation in contravention of the Takings Clause of the Fifth Amendment of the United States Constitution. *See* Second

Am. Compl. ¶¶ 3-4, ECF No. 33; Hr'g Tr. 8:5-13 (Apr. 12, 2018).[1] The court had previously granted Class Counsel's Motion for Preliminary Approval of the Settlement and to Approve Notice to the Settlement Subclass Members Regarding Proposed Class Action Settlement and Request to Set Date for Public Hearing under RCFC 23(e) ("Pls.' Mot."), ECF No. 154, and had authorized issuance of a revised notice of settlement to the class members. *See generally* Order of Feb. 2, 2018 & Attach. 1, ECF Nos. 160 & 160-1. Following notice to the class and receipt of class members' responses, a hearing on the fairness of the settlement agreement was held on April 12, 2018. For the reasons stated, the court grants final approval to the settlement negotiated by the parties.

## BACKGROUND

### A.   The Takings Claim

The land at issue in this class action is a "railroad corridor in Marshall and Hardin Counties, Iowa . . . . [that] was previously held as a right-of-way for railroad purposes by the Iowa River Railroad." Pls.' Mot. at 2; *see also* Joint Compromise Settlement Agreement Between Pls. and the United States, Hr'g Tr. Ex. C at 1;[2] Joint Stipulation Pertaining to Am. Ex. C, Attach., ECF No. 167-1 (Amended Joint Compromise Settlement Agreement Between Pls. and the United States) ("Settlement Agreement").[3] The corridor spans 34.35 miles, from milepost 243.35 to milepost 209. Pls.' Mot. at 2. As the parties recount, the Surface Transportation Board issued a Notice of Interim Trail Use ("NITU") on August 2, 2012, pursuant to which Iowa River Railroad's interests in the railroad corridor were eventually transferred to the Iowa National Heritage Foundation. *See* Second Am. Compl. ¶¶ 176-177. The Iowa National Heritage Foundation subsequently transferred these interests to Hardin County, Iowa "to use the corridor for trail development." Settlement Agreement at 1. This 34.35 mile span has now "been railbanked for possible future reactivation as a railroad pursuant to the National Trails System Act." Settlement Agreement at 1.

Plaintiffs filed suit on December 18, 2012, amending their complaint first on June 14, 2013, and then again on October 13, 2014. Plaintiffs alleged that the railroad corridor "lay

---

[1]The date will be omitted from further citations to the transcript of the fairness hearing.

[2]At the fairness hearing, the court admitted into the record three exhibits proffered by the parties, *viz.*, Exhibit A, a listing of class claimants to be compensated showing the pertinent parcel numbers, the individual settlement amounts and value, and the interest accrued through December 31, 2017; Exhibit B, a listing of dismissed parcels, and Exhibit C, the Joint Compromise Settlement Agreement Between Pls. and the United States. In the following portions of this opinion, these exhibits will be cited only by their letter, *e.g.*, "Ex. A."

[3]The court held a status conference on May 1, 2018 to address certain ambiguities and typographical errors in the Joint Compromise Settlement Agreement submitted to the court as Exhibit C at the fairness hearing. The parties subsequently submitted a stipulation to the court attaching a corrected agreement, *see* Settlement Agreement. Consequently, further references to the Settlement Agreement will be to the amended version provided pursuant to the parties' stipulation of May 1, 2018.

across property owned by [p]laintiffs," and that, absent the NITU and eventual railbanking, "[u]pon abandonment of the easement by [the Iowa River Railroad], [p]laintiffs' property would have been unburdened by any easement." Second Am. Compl. at ¶ 4. Plaintiffs sought "a monetary judgment . . . representing the full fair market value of the property taken by the United States on the date [the Surface Transportation Board issued the NITU], including severance damages and delay damages, and costs and attorneys' fees." Second Am. Compl. at 54.

The court certified "the case as an opt-in class action pursuant to Rule 23 . . . on July 10[,] 2013." Hr'g Tr. 9:1-5; *see also* Order of July 10, 2013, ECF No. 14. The plaintiff class "originally [consisted of] 171 landowners who [collectively] owned 307 parcels" of land affected by the NITU. Hr'g Tr. 10:25 to 11:1. Following class certification, a second case was filed regarding land in the corridor, and that case *Gehrke Quarries*, was consolidated with the first case. *See* Order of June 11, 2014, ECF No. 26; *see also Gehrke Quarries, Inc. v. United States*, No. 13-404L (June 11, 2014), ECF No. 20. The additional plaintiff owned four additional parcels.

The parties had arrived at a tentative settlement as to many of the relevant issues in the case when, in December 2015, the owners of 21 parcels sought to withdraw from the nascent settlement agreement and proceed to trial on their claims. The court subsequently split the class into a settlement subclass and a trial subclass. *See* Order of Dec. 22, 2015, ECF No. 61.[4] Following the establishment of settlement and trial subclasses, two landowners, holding a combined five parcels of land, opted to leave the trial subclass and rejoin the settlement subclass. Hr'g Tr. 11:24 to 12:2.

In developing the settlement agreement, the parties retained appraisers for the purpose of determining the fair market value of the property interests allegedly taken. *See* Pls.' Mot. at 3. As plaintiffs note, "Class Counsel retained both Gene Nelson, MAI, [and] . . . David Matthews, MAI[ while the United States] retained Patrick Schulte, MAI, [and] . . . Gary Thien." *Id.* The appraisers conducted site visits, "gathered an extensive amount of factual information," and "the parcels within the settlement subclass were generally grouped into various categories based upon" a number of relevant characteristics. *Id.* at 3-4. Class counsel represents that the appraisers selected representative parcels from the relevant categories and prepared full appraisal reports on those parcels, and that these reports served as the basis for "a significant and lengthy negotiation period[ that] ultimately [resulted in] a compromise agreement that includes the value of the land taken for all of the parcels in the settlement subclass." *Id.* at 4.

### B. Notice to the Class Members and the Fairness Hearing

Eventually, the parties reached agreement on the terms of a settlement, which terms were "approved . . . by the Surface Transportation Board and the appropriate representatives of the

---

[4]Surprisingly, resolution of the claims of the trial subclass occurred well before action on the claims of the settlement subclass. A five-day trial was held on the trial subclass' claims from August 1 through 5, 2016, and, after post-trial briefing, the court's decision on those claims was entered March 8, 2017. *See Sears v. United States*, 132 Fed. Cl. 6 (2017), appeal pending, No. 17-2172 (Fed. Cir.).

Attorney General." Hr'g Tr. at 16:11-14; *see also* Joint Status Report (Dec. 21, 2017), ECF No. 153 (reporting that the settlement had been approved). The plaintiffs' motion for preliminary settlement was filed on January 10, 2018. *See generally*, Pls.' Mot. The government did not join in that motion, noting in its response that "[t]he United States generally supports the terms of the settlement described by Class Counsel[, but that] . . . [t]he United States ha[d] two concerns . . . [relating to] the form of notice to class members[ and] . . . the separate fee agreements between Class Counsel and a number of class members." United States' Resp. to Class Counsel's Mot. for Prelim. Approval of the Settlement ("Def.'s Resp.") at 1, ECF No. 158. The plaintiffs addressed those concerns, *see* Class Counsel's Reply to Def.'s Resp. to Class Counsel's Mot. for Prelim. Approval of the Settlement ("Pls.' Reply"), ECF No. 159, and the court considered the parties' positions regarding the form of notice and the separate fee agreements and revised the proffered form of notice to address the parties' positions, *see* Order of February 2, 2018 ("Notice Order"), ECF No. 160.

The notice each class member received "describe[d] the terms of the proposed settlement; . . . alert[ed] the settlement subclass [p]laintiffs of their rights and obligations under the terms of the proposed settlement; and . . . inform[ed] the settlement subclass plaintiffs of the opportunity to comment on and/or object to the proposed settlement in advance of the [fairness hearing]." Pls.' Mot. at 7; *see also* Notice Order & Attach. 1 (setting out the revised notice approved by the court to be mailed to each member of the settlement subclass). Each class member also received "an individualized disclosure that describe[d] in detail how his/her compensation ha[d] been calculated[, including] . . . the principal of the settlement amount allocated to that claimant and the estimated amount of interest that ha[d] accrued through December 31, 2017." Pls.' Mot. at 8; *see also* Pls.' Mot. Ex. C at 5-6 (providing a form for identification of each class member's damages, interest, share of attorneys' fees, and net recovery including, where applicable, any amounts deducted as a result of a class member's separate fee arrangement with counsel).

At the fairness hearing, class counsel reported that the final settlement subclass is comprised of "158 landowners who collectively own 253 parcels of land." Hr'g Tr. 12:2-4 & Ex. A (listing the plaintiffs whose claims would be compensated). Of the 158 class members, 137 have affirmatively expressed their approval of the Settlement Agreement. *See* Hr'g Tr. at 18:18 to 19:11 (noting that two additional approvals were received after the deadline contained in the notice mailed to the class); Notice of Compliance Pertaining to Class Members' Responses to Class Action Settlement Notice ("Class Members' Responses") (Mar. 23, 2018) at 1, ECF No. 163, (reporting 135 approvals). "[N]o class members objected to the proposed settlement or their individual allocation amounts, and five class members notified . . . the [c]ourt . . . of their intention to either attend or to participate in the fairness hearing." Hr'g Tr. at 18:20 to 19:1; *see also* Hr'g Tr. at 21:6 to 26:1 (recording the presence and expressions of approval by class members present at the fairness hearing, none of whom wished to comment further on the proposed settlement). Five members of the class also submitted, along with their approvals, comments on the proposed settlement. *See* Class Members' Responses; *see also* Hr'g Tr. at 26:2-19 (recounting and addressing one such comment submitted by a class member, relating to the trail authority's maintenance of the trail and problems with trespassers).

At the fairness hearing, class counsel averred that "[t]he settlement is fair across the board for all class members because it is based on the amount of land actually taken from each class member and is specifically based on the value of their specific property as negotiated over [a] several-year period of time." Hr'g Tr. 20:11-16. Counsel for the government reiterated its agreement with the terms of the Settlement Agreement, and recommended approval of the settlement as fair. *See* Hr'g Tr. at 21:1-5 (noting that the United States has "no disagreement with any of [class counsel's] presentation, and [that] the United States would join in the motion to approve the settlement").

**C. The Terms of the Settlement Agreement**

The Settlement Agreement sets out the specific amounts the government has agreed to pay to the settlement subclass. The sum of $2,237,169.00 will be paid to the claimants in the settlement subclass as just compensation, apportioned to each class member according to the specific amounts shown in Exhibit A to plaintiffs' motion for approval of the settlement. Settlement Agreement ¶ 5; *see also* Pls.' Mot. at 5-6 & Ex. A; Hr'g Tr. at 14:1-5. The just compensation is coupled with $443,514.16, representing the amount of interest that has accrued on the principal from August 3, 2012, the date of the taking, to December 31, 2017. Settlement Agreement ¶ 5; Hr'g Tr. at 14:6-9. The government has agreed to pay "statutory attorneys' fees and costs of $774,532.97 pursuant to" the Uniform Relocation Assistance and Real Property Acquisition Policies Act ("Uniform Relocation Act"), Pub. L. No. 91-646, § 304, 84 Stat. 1894, 1906 (codified, as amended, at 42 U.S.C. § 4654(c));[5] Settlement Agreement ¶ 5, which amount reflects $541,722.00 in fees and $232,810.97 in costs. Hr'g Tr. 14:10-15. These sums result in a total payment of $3,455,216.13. Interest will accrue "on the total sum stated in paragraph 5 [of the Settlement Agreement, totaling $3,455,216.13,] from January 1, 2018, through the date of payment, at an annual interest rate of 3.39%." Settlement Agreement at ¶¶ 5-6; *see also* Hr'g Tr. at 15:2-5. Upon approval by the court, the "settlement will be submitted by the United States to the [United States] Department of the Treasury for payment." Settlement Agreement ¶ 8.

Additionally, plaintiffs' counsel reported that, as part of the settlement agreement, 42 parcels will be dismissed from the suit, resulting in a complete dismissal of the claims of nine class members and a partial dismissal of the claims of other plaintiffs. *See* Hr'g Tr. 11:5-17;

[5]Section 4654(c) provides:

> The court rendering a judgment for the plaintiff in a proceeding brought under section 1346(a)(2) or 1491 of Title 28, awarding compensation for the taking of property by a [f]ederal agency, or the Attorney General effecting a settlement of any such proceeding, shall determine and award or allow to such plaintiff, as a part of such judgment or settlement, such sum as will in the opinion of the court or the Attorney General reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of such proceeding.

42 U.S.C. § 4654(c).

Settlement Agreement ¶ 4; Ex. B (listing the parcels to be dismissed without compensation). These claims will be dismissed with prejudice and without compensation. *See* Settlement Agreement ¶ 4.

## ANALYSIS

The approval of settlement agreements in certified class actions is governed by Rule 23(e) of the Rules of the Court of Federal Claims ("RCFC"), and attorneys' fees and costs awards are governed by Rule 23(h). Rule 23(e) provides that, "[t]he claims . . . of a certified class may be settled . . . only with the court's approval," and provides the path that such approval must take. The touchstone is whether the parties' proposed settlement is "fair, reasonable, and adequate." Rule 23(e)(2).

### A. Approval of the Settlement Agreement

Rule 23(e) governs approval of a settlement that purports to bind all members of a class, and prescribes the procedures that must be followed:

> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
> (4) [Not used.]
> (5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

RCFC 23(e)(1)-(5).[6]

In accord with Rule 23(e)(1), the court directed notice be sent to the members of the settlement subclass regarding the terms of the proposed settlement. *See* Notice Order. Pursuant to Rule 23(e)(3), the parties have "file[d] a statement identifying any agreement made in connection with the proposal." *See generally* Settlement Agreement; Pls.' Mot. at 5-6 (reporting the terms of the parties' proposed agreement); Def.'s Resp. (reporting substantive agreement with the terms of the proposed agreement and noting minor objections respecting the proposed notice); Notice Order (specifying the court approved notice, amended to reflect the parties' briefing). The notice was issued to the class, informing class members of their right to object to the proposal under Rule 23(e)(5), and a hearing was held to determine if the settlement agreement should be approved. *See* Rule 23(e)(2); Notice Order (setting a date for a fairness

---

[6]RCFC 23 is substantially similar to its corresponding provision of the Fed. R. Civ. P., and decisions applying Fed. R. Civ. P. 23 are persuasive in this court. *See Haggart I*, 89 Fed. Cl. 523, 529 (2009) (citing *Barnes v. United States*, 68 Fed. Cl. 492, 494 & n.1 (2005)).

hearing in Eldora, Iowa). The remaining requirement that must be met for the parties' Settlement Agreement to be approved is that the court must find the parties' proposal "fair, reasonable, and adequate." RCFC 23(e)(2).

In making this determination, the court looks to the twin elements of procedural and substantive fairness. *See Christensen v. United States*, 65 Fed. Cl. 625, 629 (2005) (citing *Weinberger v. Kendrick*, 698 F.2d 61, 73-74 (2d Cir. 1982) (Friendly, J.)) ("Determination whether a proposed class action settlement is fair, reasonable, and adequate involves consideration of two types of evidence. The primary concern is with the substantive terms of the settlement . . . [and,] to supplement the . . . necessarily limited examination of the settlement's substantive terms, attention also has been paid to the negotiating process by which the settlement was reached.").

Procedural fairness is concerned with "whether the settlement resulted from 'arms-length negotiations and whether plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *Christensen*, 65 Fed. Cl. at 629 (citing *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001)) (internal alterations omitted).

Substantive fairness is concerned with whether the terms of the settlement are "fair, reasonable, and adequate," RCFC 23(e)(2), an evaluation which looks to a number of possible factors. While Rule 23 does not provide a definitive list of factors to be applied in determining whether a settlement negotiated by the parties is substantively fair, courts have considered a number of factors, including:

> (1) The relative strengths of plaintiffs' case in comparison to the proposed settlement, which necessarily takes into account:
> - (a) [t]he complexity, expense and likely duration of the litigation;
> - (b) the risks of establishing liability;
> - (c) the risks of establishing damages;
> - (d) the risks of maintaining the class action through trial;
> - (e) the reasonableness of the settlement fund in light of the best possible recovery;
> - (f) the reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation;
> - (g) the stage of the proceedings and the amount of discovery completed; [and]
> - (h) the risks of maintaining the class action through trial;
>
> (2) The recommendation of the counsel for the class regarding the proposed settlement, taking into account the adequacy of class counsels' representation of the class;
>
> (3) The reaction of the class members to the proposed settlement, taking into account the adequacy of notice to the class members of the settlement terms;
>
> (4) The fairness of the settlement to the entire class; [and]

(5) The fairness of the provision for attorney fees . . . .

*Dauphin Island Prop. Owners Ass'n v. United States*, 90 Fed. Cl. 95, 102-103 (2009) (collecting cases). A further consideration in reviewing the fairness of the parties' proposed settlement is "the interest in encouraging settlements, particularly in class actions, which are often complex, drawn out proceedings demanding a large share of finite judicial resources." *Christensen*, 65 Fed. Cl. at 629 (citations omitted).

The court concludes that the settlement is both procedurally and substantively fair. The parties' negotiations were supported by appraisal reports produced by four appraisers, *see supra*, at 3, and the Settlement Agreement was reached by "a significant and lengthy negotiation period," Pls.' Mot. at 4; *see also* Hr'g Tr. at 20:2-4 (noting that the "settlement was certainly negotiated at arm's length actually over three-plus years."). During the negotiations, the parties filed numerous joint status reports apprising the court of the parties' progress towards settlement. *See, e.g.,* ECF Nos. 143, 145-151, 153, 155. The parties' negotiations at times involved disagreements as to the progress the settlement talks were making, leading to the filing of separate status reports, *see, e.g.,* ECF Nos. 145, 146, 152, 155, but the parties' submissions to the court throughout this process indicated a continuing desire, despite delays in defendant's process for obtaining approval of the Settlement Agreement, *see e.g.,* Def.'s Status Report, ECF No. 146, to resolve the claims of the settlement subclass without further litigation. In the circumstances, the court is satisfied that the parties' negotiations were conducted without collusion and with an interest in ultimately resolving this case by settlement.

Further, the court finds that class counsel have acted as zealous advocates for class members throughout the course of this case. They have demonstrated a commendable level of effort in keeping class members informed of the status of the negotiations, *see, e.g.,* Joint Status Report, ECF No. 152 (In plaintiffs' position statement, class counsel reports that "[d]ozens of [c]lass [m]embers constantly call [c]lass [c]ounsel . . . ."); Pls.' Mot. at 8 (reporting the contents of the notice class counsel proposed to send to class members, and noting that "[i]n fact, [c]lass [c]ounsel represents that all members of the settlement subclass have already received initial disclosures concerning their settlement amounts."); Class Members' Responses (reporting the comments of the representative of the Charles E. Lakin Revocable Trust as being "[g]reat work, excellent settlement. Thank you."), and engaged in a thorough process of appraisals, site visits, and settlement negotiations, *see, e.g.,* Pls.' Mot. at 3-4. In short, the court is satisfied that the negotiations that produced the Settlement Agreement "resulted from arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *D'Amato*, 236 F.3d at 85 (internal citations omitted).

The court also concludes that the terms of the Settlement Agreement are substantively fair. The initial consideration in this vein is whether the settlement reflects the likely costs and rewards of further litigation. The parties' respective appraisers conducted appraisals that resulted in individual property valuations that both parties found satisfactory to support settlement negotiations. *See* Pls.' Mot. at 3-4. The notice sent to the class stated class counsel's recommendation that "even if the case were to proceed to litigation . . . it is unlikely that plaintiffs would be able to establish entitlement to just compensation in an amount significantly

greater than provided for in this settlement." Notice of Proposed Settlement at 2. The court concurs. In light of the lengthy negotiation, supported by the parties' respective appraisals, the court concludes that the Settlement Agreement is a reasonable result when balancing the strengths and weaknesses of the plaintiffs' case with the likely costs and uncertainties appurtenant to proceeding to trial.

Class counsel has submitted that

> [i]t is the recommendation of class counsel that the [c]ourt approve the settlement for the entire settlement subclass. As the [c]ourt can tell, the reaction of class members has been overwhelmingly positive since no objections of any kind have been received.
>
> The settlement is fair across the board for all class members because it is based on the amount of land actually taken from each class member and is specifically based on the value of their specific property as negotiated over that several-year period of time.

Hr'g Tr. at 20:5-16; *see also, e.g.*, *Raulerson v. United States*, 108 Fed. Cl. 675, 678 (2013) ("[T]he professional judgment of plaintiff's counsel is entitled to considerable weight in the court's determination of the overall adequacy of the settlement.") (citing *Dauphin*, 90 Fed. Cl. at 104 (quoting *National Treasury Employees Union v. United States*, 54 Fed. Cl. 791, 797 (2002))). The fact that the members of the settlement subclass have overwhelmingly approved the terms of the proposed Settlement Agreement, *see* Hr'g Tr. at 20:7-10, 21:1-5, with none objecting, is instructive.

The court also concludes that the settlement is fair to the class as a whole. The settlement amount, allocated as it is based on each class member's individual property interest, adequately and fairly represents the strength and magnitude of each class member's claims. A settlement is fair when it is "'uniformly available' to the entire class while also [being] 'tailored to distinct groups within the class.'" *Bailey v. United States*, 128 Fed. Cl. 550, 555 (2016) (citing *Berkley v. United States*, 59 Fed. Cl. 675, 711 (2004)). The parties each retained appraisers to produce valuation reports for purposes of informing settlement negotiations, *see supra*, at 3, and the amounts reported as just compensation in the Settlement Agreement are allocated based on each class member's actual property interest. *See* Ex. A (reporting the subclass member's individual amounts).

The Settlement Agreement negotiated by the parties would also provide members of the class with a more certain resolution of this case by avoiding further proceedings—and the attendant uncertainty—of resolving this case by trial. *See Sabo v. United States*, 102 Fed. Cl. 619, 627 (2011); *cf. also* Class Members' Responses at 10.

The court also finds as reasonable the contingency fee agreements certain class members have entered into with class counsel. *See* Hr'g Tr. at 17:21 to 18:11 (class counsel reporting that, of the 158 class members, 114 entered into contingency fee agreements of 33%, and 44 class members did not enter into any contingency fee agreements). These agreements were

affirmatively entered into between class members and class counsel, and neither the government nor any class member has lodged an objection as to those agreements.

### B. Approval of Attorneys' Fees and Costs

Rule 23(h) provides that "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." RCFC 23(h). The inquiry in this vein is whether the award is a reasonable approximation of the amount due under the statute. *Raulerson*, 108 Fed. Cl. at 678-79. In that respect, the court finds that the $774,532.97 in attorneys' fees and costs provided for in the Settlement Agreement pursuant to the Uniform Relocation Act is fair. This amount includes $541,722.00 in attorneys' fees, and $232,810.97 in costs. *See supra*, at 5. Class counsel ushered this case through a multi-year negotiation, the arm's-length settlement process resulted in a jointly agreed amount for fees and costs between class counsel and the United States, and the amounts agreed under the Uniform Relocation Act were disclosed to the class members and no objections were recorded.[7] The court thus approves the Settlement Agreement's provision for $774,532.97 in attorneys' fees and costs, taking into account the amounts called for under the contingency fee agreements that certain class members agreed with class counsel.

## CONCLUSION

For the reasons stated, plaintiffs' motion for approval of the Settlement Agreement, joined by the government, is GRANTED. The clerk is directed to enter judgment in the total amount of $3,455,216.13, consisting of $2,237,169.00 in principal and $443,514.16 in interest through December 31, 2017 for prevailing class members, and $541,722.00 in attorneys' fees and $232,810.97 in litigation costs awarded to class counsel pursuant to the Uniform Relocation Act. Interest shall accrue on the total amount of this judgment at the rate of 3.39% from January 1, 2018, through the date of payment by the Department of the Treasury. The judgment is payable to class counsel for distribution to the class according to the terms of this opinion and order and the Settlement Agreement.[8]

---

[7]Resolution of the settlement subclass' claims was delayed for several years after agreement in principle on the amount of just compensation had been reached. *See supra*, at 3 & n.5, 8. Class counsel's fees and reimbursement of costs has been postponed as a result. Over two years ago, on April 1, 2016, class counsel filed a motion for attorneys' fees and costs; *see* Pls.' Mot. for an Award of Reasonable Attorneys' Fees and Costs for the Settlement Subclass Under the Uniform [Relocation] and Real Property [Acquisition Policies] Act of 1970, ECF No. 75, but the court deferred ruling on that motion until the merits of the case had been presented, *see* Order Deferring Ruling on Mot. for Attorney Fees (Aug. 11, 2016), ECF No. 94. The terms of the Settlement Agreement provide a resolution of this motion respecting attorneys' fees for the settlement subclass.

[8]The claims of those class members listed in Exhibit B are dismissed. This opinion and order shall not affect the claims of the members of the Trial Subclass.

The clerk shall enter judgment in accord with this disposition.

It is so **ORDERED**.

                                                            s/ Charles F. Lettow
                                                            Charles F. Lettow
                                                            Judge